## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| HARLEY M. BRADY, | ) | |
| Y-13122, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Case No. 17−cv−883−NJR |
| | ) | |
| IDOC, | ) | |
| JOHN BALDWIN, | ) | |
| STEVE DUNCAN, | ) | |
| NICK LAMB, | ) | |
| JOHN DOE 1, | ) | |
| JOHN DOE 2, | ) | |
| LESLIE MCCORTY, | ) | |
| WEXFORD MEDICAL PROVIDER, | ) | |
| MRS. CUNNINGHAM, | ) | |
| MR. MCFARLAND, | ) | |
| DR. COE, | ) | |
| DR. JAMES, | ) | |
| DR. AHMED, | ) | |
| P.A. BLANCHARD, | ) | |
| KAMMEL, | ) | |
| JOHN DOE 3, | ) | |
| JOHN DOE 4, and | ) | |
| JOHN DOE 5, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Harley M. Brady, an inmate of the Illinois Department of Corrections ("IDOC")

housed at Lawrence Correctional Center ("Lawrence"), brings this *pro se* action for deprivations

of his constitutional rights pursuant to 42 U.S.C. § 1983. His claims against officials at Lawrence

can be roughly divided into three groups: (1) claims that Plaintiff suggests are connected to an

excessive amount of soy in the prison diet; (2) other medical claims directed against Defendants

Coe and Ahmed; and (3) claims pertaining to records requests in connection with Plaintiff's criminal case. In connection with these claims, Plaintiff seeks monetary damages and injunctive relief.

This case is now before the Court for a preliminary review of the Complaint (Doc. 1) pursuant to 28 U.S.C. § 1915A. As set forth below, the Court finds that a number of the claims and parties are not properly joined. Accordingly, the Court will exercise its discretion and sever unrelated claims into separate actions.

## Preliminary Matters

### *Litigation History*

In drafting his Complaint, Plaintiff utilized a standard complaint form from the Central District of Illinois. In the "Litigation History" section (Doc. 1, pp. 3, 6), Plaintiff disclosed the following:[1]

- *Brady v. Towne et al.,* Case No. 2014-cv-3071 (N.D. of Ill.) – Stayed
- *Brady v. City of Ottawa Police Dept. et al.,* Case No. 2014-cv-3072 (N.D. of Ill.) – Dismissed
- *Brady v. LaSalle County Municipality et al.,* Case No. 2014-cv-5545 (N.D. of Ill.) – Pending

(Doc. 1, p. 6). Plaintiff accurately identified his previously filed actions. Unfortunately, however, Plaintiff failed to disclose that he incurred a strike (his only one) in Case No. 2014-cv-3072 (dismissed November 6, 2014).

The Court relies on a party's litigation history listed in his or her complaint to adhere to the three-strike requirement of 28 U.S.C. § 1915(g), and thus there is a need for reliable information about prior litigation. As a result, where a party fails to provide accurate litigation history, the Court may appropriately dismiss the action for providing fraudulent information to

---

[1] Plaintiff also disclosed that he has been a litigant in two class action lawsuits.

the Court. *Hoskins v. Dart*, 633 F.3d 541, 543 (7th Cir. 2011).

In this case, the information provided was incomplete, but not necessarily fraudulent. At this time, the Court gives Plaintiff the benefit of the doubt and presumes the inaccuracy was an innocent omission. However, Plaintiff is warned that if he files any future lawsuit without fully disclosing his litigation history, including any "strikes," he will be subject to sanctions, which may include immediate dismissal of the action.

***Injunctive Relief***

Plaintiff's request for relief (Doc. 1, pp. 10-11) includes at least eighteen requests for various types of injunctive relief. Plaintiff asks that some of the injunctive relief be provided "immediately." This suggests that Plaintiff is seeking some form of immediate relief, such as a preliminary injunction.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). *See also Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013).

At this time, Plaintiff's request for immediate injunctive relief shall be denied for two reasons. First, Plaintiff has not filed a separate motion for a preliminary injunction. Second, Plaintiff's allegations do not support this form of drastic relief. Specifically, he has not demonstrated or alleged that he faces any immediate or irreparable injury or loss, and the Court cannot conclude that he is likely to succeed on the merits.

Therefore, any requests for immediate injunctive relief are **DENIED without prejudice**. Should Plaintiff's situation change, necessitating emergency intervention by the Court, he may

file a new motion for a preliminary injunction, in the appropriate action, pursuant to Rule 65(a).

**Preliminary Review – Applicable Standard**

Section 1915A provides as follows:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> >
> > (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

As a part of screening, the Court is also allowed to sever unrelated claims against different defendants into separate lawsuits. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). In *George*, the Seventh Circuit emphasized that the practice of severance is important, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *Id*.

This practice is encouraged. The Seventh Circuit Court of Appeals has recently warned district courts not to allow inmates "to flout the rules for joining claims and defendants, *see* FED. R. CIV. P. 18, 20, or to circumvent the Prison Litigation Reform Act's fee requirements by combining multiple lawsuits into a single complaint." *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017). *See also Wheeler v. Talbot*, No. 15-3325, 2017 WL 2417889 (7th Cir. June 5, 2017) (district court should have severed unrelated and improperly joined claims or dismissed one of them). Consistent with *George*, *Owens*, and *Wheeler*, improperly joined parties and/or claims will be severed into new cases, given new case numbers, and assessed separate filing fees.

## The Complaint

*Soy Diet Claims*

IDOC serves food that contains large amounts of soy. (Doc. 1, p. 7). Plaintiff contends the amount of soy is well in excess of recommended daily values (25 grams per day). *Id.* According to the Complaint, IDOC does not make information pertaining to the amount of soy in the prison diet readily accessible. (Doc. 1, p. 7). Plaintiff also claims that his written requests for nutritional information, apparently in connection to the amount of soy in the prison diet, have been denied. (Doc. 1, pp. 7, 9).

Plaintiff claims he suffers from acid reflux, indigestion, vomiting, dry heaving, excessive gas, intestinal cramps, thyroid issues, kidney issues, rashes, weight gain, and difficult bowel movements. (Doc. 1, pp. 7-8). Plaintiff also speculates that he may have an internal stomach hernia from vomiting. *Id.* Plaintiff attributes these health issues to soy in the prison diet. *Id.*

Plaintiff's sister spent time in IDOC custody and experienced adverse health issues, including thyroid problems. *Id.* Plaintiff attributes his sister's health problems to the soy-based diet she ingested while in IDOC custody. *Id.* Plaintiff has told Wexford medical staff and doctors

that his sister had thyroid issues while on a soy-based diet. *Id.* However, Plaintiff's concerns have been disregarded.

Plaintiff does not know if he is allergic to soy or simply "sensitive to it due to IDOC serving prisoners well above the daily recommended amount." *Id.* Plaintiff has complained to medical staff regarding the soy-based diet and has requested a soy-free diet. (Doc. 1, pp. 7-8). Although other inmates have received soy-free diets, Plaintiff's requests have been denied. (Doc. 1, p. 8). Apparently in connection with Plaintiff's requests for a soy-free diet, Plaintiff states that he raises a claim under the Americans with Disabilities Act ("ADA") against Wexford for denying him a medical diet. *Id.*

According to the Complaint, "Wexford medical staff and doctors" have failed to properly document Plaintiff's symptoms and adverse reactions to the soy-diet. (Doc. 1, p. 7). Specifically, Plaintiff claims that "Wexford medical staff and doctors," "nurses," and "they" have exhibited deliberate indifference to the following medical conditions–conditions Plaintiff suggests are somehow connected to his consumption of soy: (1) thyroid and digestive issues; (2) severe rash; (3) lumps in his mouth and throat; (4) stomach hernia; and (5) numbness/possible nerve damage. (Doc. 1, p. 8).

Plaintiff suggests that officials exhibited deliberate indifference to these conditions by prescribing ineffective and/or harmful treatment, failing to perform requested testing, failing to fully evaluate his symptoms, and/or failing to refer Plaintiff to an outside specialist. *Id.*

Although not entirely clear, apparently in connection with the above claims, Plaintiff has submitted various records requests that were denied, delayed, and/or not properly answered. (Doc. 1, p. 9). For instance, Plaintiff contends he submitted requests to IDOC pertaining to "nutritional information." The requests were denied. *Id.* Plaintiff also has submitted requests for

medical records and lab tests. *Id.* Plaintiff has either not received answers to these requests or is dissatisfied with the answers he has received. *Id.* Plaintiff contends the allegedly deficient responses have interfered with his ability to "complete certain facts required in [this] complaint." *Id.* Finally, Plaintiff contends that he has filed numerous grievances that have been mishandled, delayed, and/or lost. (Doc. 1, p. 11).

### Additional Medical Claims

Plaintiff asserts additional medical claims that do not appear to be related to his soy-diet claims. According to the Complaint, Plaintiff suffers from chronic back and knee pain. (Doc. 1, p. 8). Plaintiff associates these issues with his weight (265 lbs.) and a lack of arch support. *Id.* Plaintiff has been issued a back brace and an athletic compression knee sleeve. (Doc. 1, p. 8). Plaintiff claims the braces provide insufficient support and/or do not alleviate his pain. *Id.* Plaintiff states that "Wexford staff and/or doctors" have told him he cannot return to "3rd shift dietary" because of his chronic back and knee pain. *Id.* Nonetheless, they refuse to provide him with a bottom bunk permit or appropriate work restrictions. *Id.* Plaintiff also states that Wexford is subject to liability under the ADA "over Plaintiff's back and knee problems." *Id.*

Because Plaintiff does not have a bottom bunk permit, he has to climb into the top bunk. Plaintiff's knee and back issues make it very difficult for him to do this. *Id.* Climbing into the top bunk is also difficult because the bunkbeds do not include a ladder. *Id.* Accordingly, Plaintiff must use the toilet and sink in his cell to reach the top bunk. *Id.*

Plaintiff has fallen several times while attempting to climb into the top bunk. *Id.* At various times, Plaintiff has requested a bottom bunk permit from Coe, Shah (not a identified as a defendant in the caption), and Ahmed. *Id.* All of these individuals denied Plaintiff's requests, despite knowing he has fallen several times attempting to climb into the top bunk. *Id.*

On April 26, 2017, Plaintiff had a medical visit with Ahmed. (Doc. 1, p. 9). During this visit, Plaintiff asked Ahmed for joint supplements, an "actual" knee brace, and a bottom bunk permit. (Doc. 1, p. 10). With the exception of the knee brace, Plaintiff's requests were denied. *Id.* On May 6, 2017, Plaintiff was called to medical to receive his new knee brace. *Id.* Wexford medical staff attempted to give Plaintiff the knee brace; he refused it, because the new brace was another athletic compression sleeve as opposed to an "actual" knee brace. *Id.* Plaintiff asked to see Ahmed, but his request was refused. *Id.* A nurse indicated she had spoken with Ahmed and that was the brace he ordered. *Id.* Plaintiff refused the knee brace and filed a grievance. *Id.*

Plaintiff includes several additional allegations pertaining to his medical visit with Ahmed on April 26, 2017. Specifically, he alleges that he told Ahmed the pharmacist had not been refilling his medication in a timely manner. (Doc. 1, p. 9). In response, Ahmed "cut Plaintiff's medications down." *Id.* Ahmed also discontinued Plaintiff's ibuprofen prescription. *Id.* Plaintiff contends that he needs the ibuprofen for back pain, knee pain, and headaches. *Id.* Over Plaintiff's objections, Ahmed ordered Plaintiff icy-hot muscle rub for his muscle aches. *Id.* Plaintiff contends Ahmed reduced his medications and discontinued his ibuprofen as retaliation for Plaintiff's complaint about the pharmacy. *Id.* Plaintiff also states, however, that Ahmed told Plaintiff the ibuprofen had to be discontinued because of Plaintiff's liver enzyme numbers. (Doc. 1, p. 10). Plaintiff contends this cannot be a viable reason for discontinuing his ibuprofen prescription because Plaintiff sees another physician for Hepatitis-C and that doctor is not concerned about Plaintiff's liver enzyme levels. *Id.*

Plaintiff also claims Ahmed forced him to choose between taking Tums or Pepcid for heartburn. (Doc. 1, p. 10). Plaintiff contends he needs both medications but Ahmed would only prescribe one. *Id.* Plaintiff chose tums, as a "Hobson's choice," and regrets that decision.

*Records Requests pertaining to Plaintiff's Sentencing*

An officer of the Court requested Plaintiff's mental health records in connection with Plaintiff's presentence investigation report. (Doc. 1, p. 9). IDOC failed to respond. *Id.* Plaintiff also requested records in connection with a motion to reconsider his sentence. *Id.* IDOC failed to respond.

<u>**Dismissal of Certain Defendants**</u>

*Illinois Department of Corrections*

IDOC is a state governmental agency. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment); *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 427 (7th Cir. 1991) (same); *Santiago v. Lane*, 894 F.2d 219, 220 n. 3 (7th Cir. 1990) (same).

Accordingly, Plaintiff cannot direct any § 1983 claims against IDOC, and IDOC will be dismissed from this action without prejudice. In light of this dismissal, the Court construes Counts 1, 7, and 13, which have been directed against IDOC, as being directed against an Unknown Party.

*Defendants not Referenced in the Body of the Complaint*

Many of the individuals identified as defendants in the case caption and/or list of defendants are not referenced in the body of the Complaint. Merely naming a party in the caption of a complaint is not sufficient to state a claim against him. *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Further, Plaintiff's failure to assert a specific act of wrongdoing as to these

individuals does not suffice to meet the personal involvement requirement necessary for § 1983 liability. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) ("to recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right."). Therefore, the individuals identified below shall be dismissed from this action without prejudice. *See Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974).

- John Baldwin,
- Steve Duncan,
- Nick Lamb,
- John Does 1 through 5,
- Leslie McCorty,
- Mrs. Cunningham,
- Mr. McFarland,
- Dr. James,
- P.A. Blanchard, and
- Kammel.

**Dr. Shah**

The body of the Complaint directs allegations against Dr. Shah. This individual is not identified as a defendant in the caption of the case or in Plaintiff's list of defendants. Accordingly, any claims Plaintiff intended to bring against this individual should be considered dismissed without prejudice. See FED. R. CIV. P. 10(a); *Myles v. U.S.*, 416 F.3d 551, 551-52 (7th Cir. 2005).

**Groups of Individuals in the Body of the Complaint**

Plaintiff directs a number of claims against amorphous collections of unnamed individuals (*e.g.,* "Wexford medical staff and doctors," "nurses," and "Wexford staff and doctors"). This is insufficient. These types of allegations do not implicate Wexford because Wexford is not subject to *respondeat superior* liability. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676

(2009); *Shields v. Illinois Dep't. of Corr.*, 746 F.3d 782, 795-96 (7th Cir. 2014).[2] These claims also fail to implicate any of the individual medical defendants identified in the caption of the Complaint. To state a claim against an individual or entity, Plaintiff must specifically identify them, by name or Doe designation. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2). Plaintiff must then associate specific defendants with specific claims. Accordingly, any claims directed against groups of individuals shall be construed as being directed against an Unknown Party.

## Designation of Counts

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit. Any claims not addressed in this Order should be considered dismissed without prejudice from this action.

**Count 1:**  Unknown Party endangered Plaintiff's health, in violation of the Eighth Amendment, by including excessive amounts of soy in the prison diet.

**Count 2:**  Unknown Party exhibited deliberate indifference to Plaintiff's thyroid and digestive issues, in violation of the Eighth Amendment.

**Count 3:**  Unknown Party exhibited deliberate indifference to Plaintiff's severe rash, in violation of the Eighth Amendment.

**Count 4:**  Unknown Party exhibited deliberate indifference to lumps in Plaintiff's throat, in violation of the Eighth Amendment.

**Count 5:**  Unknown Party exhibited deliberate indifference to Plaintiff's symptoms of numbness and/or possible nerve damage, in violation

---

[2] A private corporation such as Wexford will generally only be held liable under § 1983 for an unconstitutional policy or custom that results in a constitutional deprivation. *Perez v. Fenoglio*, 792 F.3d 768, 780 (7th Cir. 2015) (citing *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2014)).

of the Eighth Amendment.

**Count 6:**    Unknown Party exhibited deliberate indifference to Plaintiff's thyroid and digestive issues, in violation of the Eighth Amendment.

**Count 7:**    Access to the Courts claim against Unknown Party for denying records requests and/or providing untimely/incomplete responses to records requests pertaining to the soy-content in the prison diet and Plaintiff's allegedly associated medical conditions.

**Count 8:**    Unknown Party mishandled and/or lost grievances filed by Plaintiff.

**Count 9:**    Coe and Ahmad exhibited deliberate indifference to Plaintiff's knee and back issues by refusing to issue a bottom-bunk permit, despite knowing that Plaintiff has experienced several falls attempting to climb into the top bunk, in violation of the Eighth Amendment.

**Count 10:**    Ahmed exhibited deliberate indifference to Plaintiff's knee pain by providing Plaintiff with an athletic compression sleeve instead of the "actual" knee brace Plaintiff requested, in violation of the Eighth Amendment.

**Count 11:**    Ahmed retaliated against Plaintiff for complaining about the pharmacy by changing Plaintiff's medication, in violation of the First Amendment.

**Count 12:**    Ahmed exhibited deliberate indifference to Plaintiff's medical needs by forcing Plaintiff to choose between taking Tums or Pepcid.

**Count 13:**    Access to the Courts claim against Unknown Party for failing to provide Plaintiff's mental health records on two occasions in connection with hearings and/or motions pertaining to Plaintiff's sentencing in his criminal case.

**Count 14:**    Wexford violated Title II of the ADA and/or the Rehabilitation Act by failing to provide Plaintiff with a medical diet and/or failing to provide accommodations for Plaintiff's knee and/or back issues.

**Dismissal of Count 14**

Plaintiff alleges Wexford violated the ADA by refusing to provide him with a medical diet and by failing to provide him with appropriate accommodations (a low bunk permit and/or proper knee/back braces) for his alleged disability (chronic knee and back pain).

The only proper defendant in a claim under Title II of the ADA (or the Rehabilitation Act) is the state agency (or a state official acting in his or her official capacity). *See* 29 U.S.C. § 794(b); 42 U.S.C. § 12131." *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir.2012).

Accordingly, Count 14 shall be dismissed without prejudice for failure to state a claim upon which relief can be granted. As this is the only claim directed against Wexford, Wexford shall be dismissed from this action without prejudice. To the extent that Plaintiff wants to pursue an ADA claim against an appropriate defendant, he must submit an amended complaint in accordance with Federal Rule of Civil Procedure 15 and Local Rule 15.1. Further, as set forth more fully below, because the Complaint is subject to severance under *George*, any potential ADA claim against an appropriate defendant will have to be pursued in a case involving related claims and/or defendants (*i.e.* joinder of the ADA claim must be proper under the Federal Rules of Civil Procedure).

**Severance**

Consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court shall sever the medical claims directed against Coe and Ahmad (Counts 9 through 12) into a separate action and the access to the courts claim pertaining to Plaintiff's mental health records (Count 13) into another action. These two separate actions, for Counts 9 through 12 and Count 13, will have newly assigned case numbers and shall be assessed filing fees. The severed cases shall undergo preliminary review pursuant to § 1915A after the new case numbers and judge

assignments have been made.

Counts 1 through 8, which appear, at least tenuously, to be transactionally related,[3] shall remain in this action and shall receive preliminary review below.

## Merits Review Under § 1915(A) – Counts 1 through 8

*Count 1*

The Court included Unknown Party as the defendant in Count 1 because Plaintiff directed this claim against IDOC, an entity that is not amenable to suit under § 1983, and because Plaintiff failed to associate this claim with any other named defendant. The claim is subject to dismissal on this ground alone. As set forth below, however, there are additional reasons for dismissing this Count.

Plaintiff speculates that the excessive amount of soy in the prison diet is harmful to his health. His opinion, though shared by many IDOC inmates, has been rejected by numerous courts when brought as a claim for unconstitutional conditions of confinement. *See, e.g., Harris v. Brown*, No. 07-cv-3225, 2014 WL 4948229 at *4 (C.D. Ill. Sept. 30, 2014) (concluding that "society today simply does not see soy protein as a risk to the general population, much less a serious risk"). The Court in *Harris* granted summary judgment to the defendants, after appointing experts, reviewing their reports, and accepting them as true. *Id*. The Court concluded that the "safety of soy is [at most] a topic of current debate and study." *Harris*, 2014 WL 4948229 at *4. Other courts have reached the same conclusion. *See, e.g., Ruiz v. Bailey*, No. 17-

---

[3] Plaintiff suggests that Counts 1 through 8 are all somehow connected to excessive amounts of soy in the prison diet. Plaintiff's subjective beliefs regarding the cause of the medical conditions at issue in Counts 2 through 6 do not necessarily establish that these claims are appropriately joined under the federal rules. Rather than exercise its discretion and immediately sever all of these claims into separate cases, resulting in a surplus of filing fees and potential strikes, the Court has accepted (for now) Plaintiff's suggestion that Counts 1 through 8 are appropriately joined because of their connection to soy in the prison diet. If and when Plaintiff files an amended complaint, however, that pleading will be subject to further severance if the claims and parties are not properly joined under the federal rules.

cv-00107-SMY, 2017 WL 2645630 at *3–4 (S.D. Ill. June 20, 2017) (dismissing conditions of confinement claim based on soy diet at screening); *Riley-El v. Godinez*, No. 13 C 8656, 2013 WL 4572322 at *4 (N.D. Ill. July 27, 2015) ("[T]he alleged risks posed by consuming a soy-rich diet do not rise to the level of an Eighth Amendment violation."); *Munson v. Gaetz*, 957 F. Supp. 2d 951, 954 (S.D. Ill. 2013) (finding that defendants were entitled to qualified immunity because no court has found soy to be harmful); *Smith v. Rector*, No. 13-cv-00837, 2013 WL 5436371 (S.D. Ill. Sept. 30, 2013) (dismissing claim on vague allegations that prison diet contained too much soy); *Adams v. Talbor*, No. 12-2221, 2013 WL 5940630 (C.D. Ill. Nov. 6, 2013) (dismissing inmate's claim that soy diet caused his stomach problems). The alleged risks associated with a soy-rich diet have not been deemed sufficiently serious to support an Eighth Amendment claim for unconstitutional conditions of confinement.

In addition, the claim is subject to dismissal on grounds of qualified immunity, which shields government officials from liability where "their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When determining whether a defendant is entitled to qualified immunity, courts apply a two-part test: (1) whether the complained-of conduct violates the Constitution; and (2) whether the right was clearly established at the time the conduct occurred. *Id*. at 743 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The Supreme Court has emphasized the importance of reaching a decision regarding qualified immunity at the earliest possible stage in litigation. *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The Seventh Circuit has upheld dismissal of soy diet claims under Federal Rule of Civil Procedure 12(b)(6), which shares its standard with § 1915A. *Doe v. Village of Arlington Heights*, 782 F.3d 911, 916 (7th Cir. 2015). Where the

factual allegations in the amended complaint fail to demonstrate any violation of a clearly established constitutional right, dismissal based on qualified immunity is appropriate.

This Court cannot locate a case in which a court found that a soy diet posed a serious risk of harm to an inmate's health, that a soy diet is nutritionally inadequate, or that the diet is otherwise unconstitutional. On the contrary, the Seventh Circuit has declined to hold that a soy diet violates the Constitution. *Johnson v. Randle*, 619 F. App'x 552, 554 (7th Cir. 2015). Consistent with these cases, this Court finds no clearly established constitutional right to a soy-free or low-soy diet.

Accordingly, Count 1 shall be dismissed without prejudice for failure to state a claim upon which relief may be granted and on the basis of qualified immunity.

### Counts 2 through 6 – Deliberate Indifference to Medical Needs

Counts 2 through 6 are medical claims that arise under the Eighth Amendment. Prison officials violate the Eighth Amendment's proscription against "cruel and unusual punishments" if they display deliberate indifference to an inmate's serious medical needs. *Greeno v. Daley*, 414 F.3d 645, 652–53 (7th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted)). A prisoner who wishes to bring a claim against state officials under the Eighth Amendment must show that he suffered from a sufficiently serious medical condition (objective standard) and state officials exhibited deliberate indifference to his medical needs (subjective standard). *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001).

Plaintiff offers insufficient allegations to support either component of these claims. Plaintiff provides little information regarding the subject medical conditions. For example, Plaintiff states that he suffers from a chronic rash and lumps in his throat, but provides no further

information. These minimal allegations do not sufficiently allege an objectively serious medical condition. The allegations also lack sufficient detail with regard to the subjective component. The allegations are all directed against groups of individuals and, other than claiming Plaintiff failed to receive the treatment he subjectively believes he needs, provide no additional detail. It is entirely unclear from whom, when, and how Plaintiff sought treatment from any particular individual and how that individual failed to assist Plaintiff.

For these reasons, the Complaint does not state a plausible deliberate indifference claim against any defendant. Accordingly, Counts 2, 3, 4, 5, and 6 do not survive preliminary review and shall be dismissed without prejudice for failure to state a claim upon which relief can be granted.

**Count 7 – Access to the Courts**

Plaintiff contends certain records requests were denied and/or responses to the same were delayed and/or incomplete. (Doc. 1, p. 9). Plaintiff claims this prevented him from "complet[ing] certain facts required in his complaint." *Id.*

The Constitution protects a prisoner's right of access to the courts, and state actors must respect that right by not impeding his efforts to pursue legal claims. *Lewis v. Casey*, 518 U.S. 343, 349–54 (1996); *Tarpley v. Allen County, In.*, 312 F.3d 895, 899 (7th Cir. 2002); *May v. Sheahan*, 226 F.3d 876, 883 (7th Cir. 2000). The right is violated when a prisoner is deprived of such access and suffers actual injury as a result. *Lewis*, 518 U.S. at 350; *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009); *Campbell v. Clarke*, 481 F.3d 967, 968 (7th Cir. 2007). Here, plaintiff has not shown any actual injury as a result of the above actions. He was able to file this lawsuit, so he was not prejudiced. Moreover, copies of nutritional information and medical records are not needed at this stage of the litigation.

Accordingly, Count 7 shall be dismissed without prejudice for failure to state a claim upon which relief can be granted.

### Count 8 – Mishandling Grievances

Plaintiff alleges that his grievances have been mishandled and/or are not being taken seriously. Generally, the denial of a grievance—standing alone—is not enough to violate the United States Constitution. *See, e.g., George v. Abdullah*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."); *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of [a prisoner's] grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim."). *See also Estate of Miller by Chassie v. Marberry*, 847 F.3d 425, 428-29 (7th Cir. 2017) ("inaction following receipt of a complaint about someone else's conduct is not a source of liability"). *See also Aguilar v. Gaston-Camara*, 2017 WL 2784561, *4 (7th Cir. 2017) (citing *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (acknowledging that the Seventh Circuit has "rejected the notion that 'everyone who knows about a prisoner's problems' will incur § 1983 liability.")).

In this case, Plaintiff's grievance claims fall short of stating a constitutional claim. Accordingly, Count 8 shall be dismissed without prejudice for failure to state a claim upon which relief can be granted.

### Summary

For the reasons stated above, Counts 1 through 8 shall be dismissed without prejudice for failure to state a claim upon which relief can be granted. As these are the only counts remaining in this action, the Complaint shall be dismissed for failure to state a claim upon which relief can be granted. The dismissal shall be without prejudice and with leave to amend.

## Pending Motions

### *Motion for Arbitration*

Plaintiff has filed a motion asking the Court to order the parties to arbitrate. (Doc. 4). First, the Complaint did not survive preliminary review, and Defendants have not been served. Accordingly, Plaintiff's request is premature. Second, Plaintiff has not identified any contractual or statutory basis for compelling arbitration in this case. Accordingly, the motion is **DENIED** without prejudice.

### *Motion for Recruitment of Counsel*

The dismissal of the Complaint without prejudice raises the question of whether Plaintiff is capable of drafting a viable amended complaint without the assistance of counsel.[4] When a *pro se* litigant submits a request for assistance of counsel, the Court must first consider whether the indigent plaintiff has made reasonable attempts to secure counsel on his own. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)). If so, the Court must examine "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (quoting *Pruitt*, 503 F.3d at 655). "The question...is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Pruitt*, 503 F.3d at 655. The Court also considers such factors as the plaintiff's "literacy, communication skills, education level, and litigation experience." *Id.*

---

[4] There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). Nevertheless, the district court has discretion under 28 U.S.C. § 1915(e)(1) to recruit counsel for an indigent litigant. *Ray v. Wexford Health Sources, Inc*., 706 F.3d 864, 866–67 (7th Cir. 2013).

Plaintiff states that he has written to a few organizations and/or law firms. Unfortunately, however, he provides no additional information pertaining to the responses to his letters. Accordingly, the Court cannot discern if the first requirement has been met. As to the second requirement, Plaintiff states that he has some college education. The pleadings also indicate he is capable of coherently stating the relevant facts. At this juncture, the Court is merely concerned with whether this action can get out of the gate, so to speak. All that is required is for Plaintiff to include more factual content regarding his claims.

Thus, recruitment of counsel is not warranted at this time, and the Motion for Recruitment of Counsel (Doc. 3) is **DENIED without prejudice**. The Court will remain open to appointing counsel as the case progresses.

## Disposition

### *Dismissal of Count 14*

**IT IS HEREBY ORDERED** that **COUNT 14** is **DISMISSED without prejudice** for failure to state a claim upon which relief can be granted. In relation to the dismissal of **COUNT 14, WEXFORD** is **DISMISSED** from this action. The Clerk of the Court is **DIRECTED** to terminate this entity as a party.

### *Dismissal of Additional Defendants*

**IT IS HEREBY ORDERED** that **IDOC, BALDWIN, DUNCAN, LAMB, JOHN DOES 1 through 5, MCCORTY, CUNNINGHAM, MCFARLAND, JAMES, BLANCHARD,** and **KAMMEL** are dismissed from the action without prejudice for failure to state a claim upon which relief can be granted. The Clerk of the Court is **DIRECTED** to terminate these entities and individuals as parties.

*Severance*

  **IT IS HEREBY ORDERED** that **COUNTS 9, 10, 11,** and **12** are **SEVERED** into a new case against **COE** and **AHMED**.

  **IT IS FURTHER ORDERED** that **COUNT 13** is **SEVERED** into a new case against **UNKNOWN PARTY**.

  **IT IS FURTHER ORDERED** that the *only claims remaining in this action,* are *COUNTS 1, 2, 3, 4, 5, 6, 7, and 8.*

  Consistent with the severance of **COUNTS 9** through **12** and **COUNT 13**, the Clerk of the Court is **DIRECTED** to **TERMINATE COE** and **AHMED** as parties in *this* action.

*Newly Severed Cases*

  The claims in the newly severed cases shall be subject to screening pursuant to 28 U.S.C. § 1915A after the new case number and judge assignment is made. In the new cases, the Clerk is **DIRECTED** to file the following documents:

- This Memorandum and Order;
- The Complaint (Doc. 1); and
- Plaintiff's motion to proceed *in forma pauperis* (Doc. 2).

Plaintiff **will be responsible for an additional $350 filing fee** in each newly severed case.[5] No service shall be ordered in the severed cases until the § 1915A review is completed.

  The newly severed cases shall be captioned:

**COUNTS 9 through 12:**

- **HARLEY M. BRADY**, Plaintiff vs. **DR. COE** (Wexford Doctor) and **DR. AHMED** (Wexford Doctor), Defendants.

---

[5] Pursuant to 28 U.S.C. § 1914, effective May 1, 2013, an additional $50.00 administrative fee is also to be assessed in all civil actions, unless pauper status is granted.

**COUNT 13:**

- **HARLEY M. BRADY**, Plaintiff vs. **UNKNOWN PARTY**, Defendant.

***Merits Review of Counts 1 through 8 (The Only Claims Remaining in This Case)***

**IT IS HEREBY ORDERED** that **COUNTS 1** through **8** are **DISMISSED** without prejudice for failure to state a claim upon which relief can be granted. Further, the Complaint is **DISMISSED without prejudice** for failure to state a claim upon which relief can be granted.

This case shall now be captioned: **HARLEY M. BRADY** Plaintiff vs. **UNKNOWN PARTY**, Defendant.

**IT IS FURTHER ORDERED** that, should Plaintiff wish to proceed with this case, Plaintiff shall file his First Amended Complaint within 28 days of the entry of this order (on or before **November 29, 2017**). It is strongly recommended that Plaintiff use the form designed for use in this Court for civil rights actions. Plaintiff should label the pleading "First Amended Complaint," and he should include Case Number 17-cv-883-NJR. The First Amended Complaint should be limited to the claims at issue in Counts 1 through 8, as designated herein. <u>**Plaintiff is reminded that the amended pleading may be subject to further severance.**</u>

Should Plaintiff fail to file his First Amended Complaint within the allotted time or consistent with the instructions set forth in this Order, the entire case shall be dismissed with prejudice for failure to comply with a court order and/or for failure to prosecute his claims. FED. R. APP. P. 41(b). *See generally Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2). Such dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g).

An amended complaint supersedes and replaces all previous complaints, rendering previous complaints void. *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1

(7th Cir. 2004). The Court will not accept piecemeal amendments to a complaint. Thus, the First Amended Complaint must stand on its own, without reference to any other pleading. Should the First Amended Complaint not conform to these requirements, it shall be stricken.

In order to assist Plaintiff in preparing his First Amended Complaint, the **CLERK** is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

Plaintiff is further **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable, regardless of whether Plaintiff elects to file a First Amended Complaint. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

   **IT IS SO ORDERED.**

   **DATED:  November 1, 2017**

   _____
   **NANCY J. ROSENSTENGEL**
   **United States District Judge**